**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0605n.06

Case No. 18-5362

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Dec 03, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| TIMOTHY COOK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BATCHELDER, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. Memphis police found Timothy Cook sitting in the front passenger seat of a parked car with a loaded firearm, marijuana, and ecstasy. Cook was a convicted felon, and the terms of his supervised release prohibited him from committing another crime or possessing a firearm. In view of these new offenses, the district court revoked his supervised release and sentenced him to 24 months in prison. We affirm.

In 2011, Cook pleaded guilty to being a felon in possession of a firearm. In 2015, he left prison on supervised release, with the condition that he not commit another crime or possess a firearm. Before long, he assaulted someone, and the court revoked his release and sentenced him to 8 months, followed by 15 months of supervised release. Cook left prison again on November 20, 2017. Ten days later, Memphis police arrested him again after finding him in a parked car with a loaded gun and drugs—the conduct at issue in today's appeal.

The district court held a hearing to determine whether to revoke Cook's supervised release again. One witness, Officer Michael Bartlett, testified. Bartlett said he saw a parked car with the engine running and the lights off. When he shined a light on the car, he saw the car's lone occupant reach "towards the passenger door as if he was trying to conceal something." R. 93 at 19. Bartlett approached, Cook rolled down the window, and Bartlett smelled marijuana. A search revealed a loaded firearm and drugs in the passenger-side door. On top of that, Bartlett testified that the police found another person's identification in the car's cup holder and that an unidentified woman arrived at the scene saying that the car belonged to her and that she had let her boyfriend use it.

At allocution, though not in the liability phase of the hearing, Cook told the court that the "charges" against him were "not true." *Id.* at 53. He complained that Officer Bartlett's testimony amounted to "fabricated lies," *id.* at 55, noting that Officer Bartlett testified that the car had been running but the lights were off. According to Cook, "the lights come on" in new cars whenever someone turns on the ignition. *Id.* Cook also claimed that another man had originally sat in the passenger seat and went inside a house, after which Cook "jumped in the front seat" to charge his phone. *Id.* at 56. At the end of it all, Cook maintained his innocence: "I don't need no gun. They can run them fingerprints. It ain't mine." *Id.* at 57.

When all was said and done, the court found that Cook constructively possessed the gun and drugs, and imposed a 24-month sentence. Cook appeals.

A district court may revoke supervised release if it finds by a preponderance of the evidence that a defendant violated a condition of release. *See* 18 U.S.C. § 3583(e)(3). We review the court's decision for abuse of discretion. *United States v. Kontrol*, 554 F.3d 1089, 1092 (6th Cir. 2009). Under this deferential standard, we analyze legal determinations anew, *id.*, but may not overturn

factual findings unless we develop "a definite and firm conviction that a mistake has been committed," *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Cook claims that the district court improperly ignored his statements during allocution. According to Cook, "the district court believed it could *only* consider Officer Barlett's testimony" and erroneously felt bound by the Federal Rules of Evidence to exclude Cook's remarks. Appellant's Br. 13.

The Federal Rules of Evidence generally do not apply in informal hearings such as a proceeding to revoke supervised release. But a judge may follow the Rules' principles as a matter of discretion. *See United States v. Givens*, 786 F.3d 470, 473 (6th Cir. 2015). When faced with a defendant offering evidence at allocution, a court may discount the evidence because it lacked the proper attributes to assess credibility, such as cross-examination. *See id.*

As we see it, Cook misapprehended what the court was doing. It did not intend Cook's allocution as an opportunity to provide new evidence. Cook after all had already chosen to put the government to its proof, after which the lawyers presented arguments and the judge made a finding of fact that Cook constructively possessed the weapon and drugs. Instead, when the court invited Cook to speak, it suggested that Cook might want to acknowledge a woman who accompanied Cook to court, apparently Cook's mother. When Cook had trouble finding words, the court offered another suggestion: Cook should describe his work. "That's an easy place to start and a pretty safe spot." R. 93 at 52.

Cook began speaking and, before long, he offered purported evidence and quasi-legal arguments to the effect that he did not violate the terms of his supervised release. In response, the district court said it had encountered situations in which a defendant spoke "after the evidence was closed and after arguments of counsel." *Id.* at 55. Rather than ignore Cook's statements altogether,

the court evaluated each of them. After Cook said he didn't "tote guns" or "sell drugs," *id.* at 53, for instance, the judge explained the difference between actual and constructive possession. When Cook said he jumped into the front seat to charge his phone and the police should check the gun for fingerprints, the court responded by noting it didn't "have a hypothetical" and explained the difference between a violation of supervised release and the substantive gun charge. *Id.* at 58. The court noted that it had "facts" contradicting Cook, such as the "gun in the pocket of the door immediate to [Cook's] right." *Id.*

This all explains why the court deemed it "important" to have all "information . . . in a form that we can receive" and that "can be relied on." *Id.* These comments do not imply that the district court thought itself bound to comply with the Federal Rules of Evidence. They suggest instead that the court chose to deem less credible or inherently unreliable information offered in an allocution. That choice was the court's prerogative. *See Givens*, 786 F.3d at 473.

Cook persists that the district court's comments about "evidence [being] closed" and the "form" of information show that the court felt obliged to follow the Federal Rules of Evidence. But neither of these comments mentioned the Rules or suggested that the court needed to observe them. Cook's preferred inference is neither the best one nor the required one.

Cook complains that the court's short reference to hypotheticals makes it "impossible to tell exactly what the court was referring to" and that some of Cook's remarks were not hypothetical. Appellant's Br. 14–15. But Cook can't have it both ways, interpreting stray remarks to his benefit but ignoring other comments to his detriment. The district court with patience and compassion merely tried to explain why it revoked Cook's supervised release.

Cook adds that aspects of his testimony were consistent with Bartlett's account of events, such as the appearance of the unidentified woman, and so the district court needed to "at least

4

review Mr. Cook's testimony." *Id.* at 15.  But the court did evaluate Cook's statements and found they lacked credibility.

We affirm.